(Decided 5th December, 1884.]

SAMUEL N. HYDE *vs.* AUGUST GREUCH, by his next friend, PAUL STURM.

*Malicious prosecution—Obtention of a Peace warrant—Forms of Procedure in obtaining a Peace warrant—Right of Action for Damages—Inference of Malice in Law in absence of Proof to the contrary—Acting under Advice of Counsel—Punitive damages—Good faith—Evidence inadmissible.*

In an ordinary action for a malicious prosecution, it is essential to aver in the declaration, and prove at the trial, that the prosecution has terminated in favor of the party against whom it was instituted. But this rule is not applicable to a case originating in the obtention of a peace warrant.

In obtaining a peace warrant, the forms contained in *Latrobe's Justices' Practice*, (chapter 16,) must be followed in every substantial particular. Any material omission, or substantial departure therefrom, especially in regard to the oath and the warrant, will vitiate the whole proceeding.

If a peace warrant has been sued out against a party falsely, maliciously and without any reasonable or probable cause, and he has

37     v. 62.

been put in prison or otherwise injured thereby, a wrong has been done to him, and he can seek redress therefor by his action for damages.

Where in causing the arrest of a party, there are no circumstances connected with the transaction and within the knowledge of the person procuring the arrest, which would induce a reasonable, dispassionate man to believe that he was in danger of having some serious injury done to his person or property by the party arrested, there is no probable cause for procuring the arrest, and it may be inferred that such arrest was malicious in law, in the absence of sufficient proof to the contrary.

And the defendant, in such action, will not be exonerated from liability by reason of his having acted under the advice of counsel, unless he laid before his counsel all the material facts within his knowledge, or which by the exercise of reasonable diligence he could have ascertained, and acted under the advice given, believing the same to be sound and without malice.

In such action, the jury may award exemplary or punitive damages, in addition to such as may compensate the plaintiff for the wrong and indignity he has sustained.

In an action for a malicious prosecution, brought by a minor against a person who had sworn out a peace warrant against him, the general bad reputation of the plaintiff's mother as a peaceable and orderly person, is not admissible in evidence to show that the defendant acted in good faith in procuring the warrant.

APPEAL from the Circuit Court for Howard County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the defendant proved by Captain Delanty, of the Baltimore Police force, and by other witnesses, that prior to April, 1882, the mother of the plaintiff resided in Baltimore; that they knew her three or four years ago, and that her reputation for truth and veracity in the neighborhood in which she resided, was bad, and that from that reputation they would not believe her on oath. And then asked the fol-

lowing question: Do you know her general reputation for orderly or disorderly conduct, and whether she is peaceable or otherwise? To this question the plaintiff objected, and the Court, (JONES and SMITH, J.,) refused to allow it to be asked. The defendant excepted.

*Second Exception.*—The defendant further offered to ask certain police officers of Baltimore City, the following question: " Have you been called upon by any one in the City of Baltimore, to protect them from the violence of Mrs. Sturm?" To which question the plaintiff objected, and the Court refused to allow it to be asked. The defendant excepted.

*Third Exception.*—The plaintiff offered the four following prayers:

1. If the jury shall find from the evidence, that the defendant, by making the necessary affidavit, caused and procured James A. Lyle, a justice of the peace of Harford County, to issue a peace warrant, for the apprehension of the plaintiff; and that the plaintiff was arrested under and by virtue of said warrant, and committed to jail, and there detained until he was released on bail; and shall further find that at the time of making said affidavit and procuring said warrant, the defendant was acting maliciously, and without probable cause, as defined in the plaintiff's second prayer, then the plaintiff is entitled to recover.

2. If the jury shall find that the defendant caused the arrest of the plaintiff, as set forth in the plaintiff's first prayer, and that there were no circumstances connected with the transaction, and within the knowledge of the defendant, which would have induced a reasonable, dispassionate man to believe that the defendant was in danger of having some serious injury as to person or property done to him by the plaintiff, then there was no probable cause for the procuring of said warrant, and the jury may infer in the absence of sufficient proof to the contrary, that the procurement of said warrant was malicious in law.

3. The defendant will not be exonerated from liability in this case, by reason of having consulted Mr. Young, his counsel, unless they find from the evidence that he laid before said counsel all the material facts within his knowledge, or which by the exercise of reasonable diligence he could have ascertained, and concealed nothing material, and that he was thereupon advised by said counsel to swear out said warrant, and that he acted thereunder, believing such advice to be sound, and without malice.

4. If the jury shall find a verdict for the plaintiff, they are at liberty to take into consideration all the circumstances of the case, and award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful act, but may also award exemplary or punitive damages as a punishment to the defendant for such wrongful act.

The defendant offered four prayers, the first, second, and third of which were granted, and are therefore omitted; the following was rejected:

4. That there is no testimony in the cause legally sufficient to show that, at the time of the institution of this suit, the prosecution complained of in the declaration was finally terminated and ended, and their verdict must be for the defendant.

The Court granted the prayers of the plaintiff. The defendant excepted. The jury rendered a verdict for the plaintiff for $2500, and judgment was entered therefor. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, RITCHIE, and BRYAN, J.

*Henry E. Wootton,* for the appellant.

*E. Calvin Williams,* and *William A. Hammond,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This action was brought by the appellee, a minor under twenty-one years of age, against the appellant; and the declaration charges, in substance, that the defendant, falsely, maliciously, and without any reasonable or probable cause, procured a peace warrant against the plaintiff under which he was arrested and committed to jail, where he was confined until he gave security to keep the peace, upon giving which he was discharged.

At the trial, the plaintiff, having first proved the issuing of the warrant, (which on its face appears to have been issued upon the information and oath of the defendant,) offered in evidence the docket entries of the magistrate in the case, which showed that on the 16th of August, 1882, the defendant made oath before him, that he was afraid the plaintiff would do him serious injury in person and property; that he issued the warrant and that the plaintiff was thereupon arrested on the same day, and committed to jail in default of bail, where he remained until the 27th of September, following, when he was released upon giving security for his good behaviour. He then proved by the magistrate that these docket entries showed all that had taken place in the matter, and further offered evidence tending to show that the defendant, in thus obtaining this warrant, acted maliciously and without probable cause.

Two exceptions were taken to the rejection of certain testimony offered by the defendant, and several instructions were requested on both sides. Among those asked by the defendant, was one to the effect that there was no testimony legally sufficient to show that, at the time this suit was instituted, the prosecution complained of in the declaration, was finally terminated and ended, and therefore the verdict must be for the defendant. The refusal of the Court to grant this instruction, raises the main question in the case, and it is one of first impression in this Court.

In an ordinary action for a malicious prosecution it is essential to aver in the declaration, and to prove at the trial, that the prosecution has terminated in favor of the party against whom it was instituted. This may be brought about by his acquittal on trial, by the refusal of the grand jury to indict, or by some other termination of the proceeding resulting in his lawful and final discharge therefrom. In such a case the party is usually charged with having committed some specific crime. If he is convicted, he can bring no action, no matter in what degree of malice the accusation may have originated, and he cannot sue before the prosecution is ended, for *non constat* it may not result in his conviction.

But in a case like the present, originating in the obtention of a peace warrant, we do not see how the proceeding can ever have a termination in favor of the party against whom the warrant is sworn.out. The object of such a proceeding is not to punish the party for having committed a crime, but to prevent him from committing one. Surety for the peace, says *Blackstone* (4 *Comm.* 251,) is one of the branches of preventive justice, and consists in obliging those persons, of whom there is probable.ground to suspect of future misbehaviour, to stipulate with and give full assurance to the public, that such offence as is apprehended, shall not happen, by finding pledges or securities. for keeping the peace.

The mode of obtaining the warrant, and all the proceedings thereon, are clearly stated in that excellent book, *Latrobe's Justices' Practice,* in which a chapter (*chap.* 16,) is devoted to this subject. Simple and plain forms for the oath, the warrant, the commitment, the recognizance, and the release, are there given, and these are accompanied with specific directions as to the general mode of procedure, so that the forms can be easily adapted to the circumstances of each case as it arises. These are so well known to the magistracy of the State, and have been so

long in use, that we are unwilling to sanction any modification of them, or to introduce in their stead the more minute and elaborate forms set out in 1 *Chitty's Genl. Pr.* 679, which have been adopted in England from the common law, and the construction given by the English Courts to the Statute 34 *Edw.* 3, *ch.* 1. It is proper to observe, however, that the forms found in *Latrobe's Justice,* must be followed in every substantial particular. Any material omission, or substantial departure therefrom, especially in regard to the oath and the warrant, will vitiate the whole proceeding. All the authorities upon the subject require this, and we need only to refer to the case of *The Queen vs. Dunn,* 12 *Adol. & Ellis,* 599.

According to the practice thus established, one who seeks surety of the peace against another, must apply to some justice of the peace and take the required oath, in which, among other things, he must swear that he does not ask it "out of malice or for vexation." This is an important part of the oath, and should never be omitted, for great caution should be observed by the magistrate, especially where the application seems to arise from malice, and the writ should never be granted merely because the applicant is at variance with another. When this oath is duly taken, the justice issues the warrant, which, after reciting the oath, commands the sheriff to apprehend the party and bring him before the subscriber, or some other justice, to find surety as well for his appearance at the next Circuit Court of the county, as also for keeping the peace in the meantime, towards the citizens of the State and chiefly towards the complainant. When he is arrested and brought before the magistrate, he is at once required to give the requisite security, and if he refuses or fails to do so, he is committed to jail until he finds such security, or is discharged by due course of law. If he gives the security immediately, or before the next Court, the magistrate releases him from custody. The condition of the

recognizance, whenever given, is that the party shall well and truly make his appearance to the next Circuit Court, there to receive what the Court may enjoin upon him, and in the meantime to keep the peace as stated in the warrant; and the recognizance is then returned to the Court. If the party remains in jail, or appears according to the tenor of his recognizance, and the complainant does not appear to ask its continuance, the Court, as a matter of course, releases him from custody, or discharges the recognizance, as the case may be. If, however, the complainant does appear and seeks a continuance of the proceeding, then the Court, on a full examination of the evidence as well on behalf of the complainant as the party accused, may release him, or discharge the recognizance, or order the proceeding to be continued.

Now, what is the effect of a release or discharge obtained in either of these modes? Clearly it is not equivalent to the acquittal of a party charged with having committed a crime, for there is no verdict or finding of not guilty. Nor does such ending of the proceeding amount to, or necessarily involve, a judgment or determination by the Court that there is no necessity for its institution, or that it was instituted maliciously, or that the warrant was otherwise wrongfully issued. It is not, therefore, equivalent to the refusal of a grand jury to indict, nor to an abandonment or other final termination of an ordinary criminal prosecution in favor of the party charged. This is clearly so where the discharge comes as a matter of course, and where no investigation is asked for or had by the Court. And where an inquiry takes place, it is simply for the purpose of determining whether the party shall be longer held in custody or under recognizance. The judgment that he shall not be so held, is not only consistent with, but usually proceeds upon, the assumption that the process was rightfully issued in the first instance, and having fully served its preventive purpose, a continuance of its

restraining effect is no longer necessary in order to preserve the public peace, or to protect the complainant. This, in our opinion, is the only legal inference that can be drawn from, and the only legal effect that can be attributed to, such a judgment.

It is obvious therefore, that it is impossible for a party who seeks redress for having been confined in jail through the instrumentality of a peace warrant maliciously sued out against him, to allege and prove a final termination of the proceeding in his favor. The question before us then comes at last to this: can an action be maintained for such a wrong? And why not? It is the policy of the law to afford a remedy for every wrong. True, no action can be founded on an erroneous judgment rendered by a tribunal of competent jurisdiction, in a case where the party has had an opportunity to appear and defend himself or his rights, even though he may suffer injury therefrom. But such is not the nature or character of the action of a magistrate in a peace-warrant proceeding. Before him the proceedings are *ex parte* throughout. The facts stated in the oath of the applicant cannot be contradicted or contested by the accused. The magistrate is bound to accept them as true, and, if the oath is duly taken, to act upon them by issuing the warrant. So when the party is brought before him under the writ, no investigation whatever takes place. His simple duty is to require the party to give security, to commit him if he does not, and to release him when he does; and in doing this, it is manifest that he exercises no judicial function whatever. The averment in the oath that the applicant does not require the warrant "out of malice or for vexation," is all the protection against persecution, the proceeding before the magistrate affords the accused. A process thus easily obtained, and entirely *ex parte* is obviously one peculiarly liable to abuse. Malevolent and evil-disposed persons can readily use it for the purpose

of harassing, or inflicting grievous injuries upon those towards whom their ill-will may be directed, as well as to accomplish some other object than that for which alone the law permits its use. If, then, such a warrant has been sued out against a party falsely, maliciously and without any reasonable or probable cause, as the declaration in this case avers, and he has been put in prison or otherwise injured thereby, it is clear that a wrong has been done to him for which he ought to be allowed to seek redress in an action like the present.

We should, therefore, hold the action maintainable even if there were no precedent or authority in its support. But such authority is not wanting. The case of *Steward vs. Gromett,* 97 *Eng. C. L. Rep.,* 191, is very similar to this. It was an action against the defendant for falsely, maliciously, and without reasonable or probable cause, making information on oath before a magistrate that the plaintiff had used threatening language to him, whereby he went in fear of bodily harm, and so procuring a warrant under which the plaintiff was incarcerated for want of sureties for a period of six months. The defendant pleaded that the prosecution was instituted for the purpose of having the plaintiff bound over to keep the peace, or be detained in custody if he could not find sufficient sureties, for such time as one of the justices of the peace should think fit; that he entirely succeeded in such prosecution, and the plaintiff was detained in custody for six months, that being the time the said justice thought fit, during the whole of which period he was unable to find sufficient sureties; and that said prosecution ended by reason of the expiration of the six months and not otherwise. There was a demurrer to this plea, and the question was elaborately argued in the Common Pleas before all the Judges; and it was held that the action was maintainable, and that in such an action it was not necessary, as in the ordinary case of an action for a mali-

cious prosecution, to aver that the proceeding before the magistrate was determined in favor of the plaintiff, such a proceeding being *ex parte,* and the truth of the statement made by the applicant to the magistrate not being controvertible. WILLIAMS, J., in delivering his judgment, said: "It is not, and could not be, contended that the action was not maintainable, provided the plaintiff duly complied with the ordinary rule by alleging that the proceeding, which he alleges to have been maliciously taken, terminated in his favor. The question is whether that rule applies to a case of this sort? In the case of the exhibiting of articles of the peace,—which it seems to me is strictly analogous to the less formal proceeding before the magistrates out of sessions—the authorities show that the matter could not terminate in favor of the plaintiff, because he is not at liberty to controvert the statement made against him; and therefore it is impossible to say that the existence of the proceedings, and the fact that they have not terminated favorably to the plaintiff, is any evidence that there was reasonable or probable cause for instituting them. The authorities show that the magistrates are bound to act upon the statement made to them, and do not exercise any judicial functions at all. And there seems to be no distinction in this respect between a proceeding to obtain sureties for good behaviour and the more formal proceeding by exhibiting articles of the peace at the sessions. That being so, it is clear that the rule to which I have adverted is not applicable on the present occasion, but that this action may be maintained without showing a termination of the proceedings before the magistrates favorable to the plaintiff." The same view was taken by the other Judges, and the plea was overruled and the action sustained.

It would therefore seem to be clear both upon reason and authority that the present action is maintainable, upon the declaration as it stands and the proof on the

part of the plaintiff which appears in the record. We therefore find that the Court below committed no error in rejecting the defendant's fourth prayer nor in granting the plaintiff's first and second prayers.

No objection was made in argument to the granting of the plaintiff's third and fourth prayers, and, in our opinion, the legal propositions set out in them are correct. Nor do we find any error in the rulings of the Court upon the questions of evidence presented in the first and second exceptions. There is, in our judgment, no rule or principle of the law of evidence under which the general bad reputation of the plaintiff's mother, as a peaceable and orderly person, could be admitted to show that the defendant acted in good faith in procuring a peace-warrant against her son.

*Judgment affirmed.*

(Decided 19th December, 1884.)