The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

ELVIN L. GENTRY, P.C. and Christopher Hawk, Intervenors–Appellants.

No. 03CA1291.

Colorado Court of Appeals.
Div. II.

Nov. 18, 2004.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Elvin L. Gentry, P.C., Elvin L. Gentry, Colorado Springs, Colorado, for the Intervenor–Appellant Elvin L. Gentry, P.C.

Stinar, Zendejas, LLC, M. James Zendejas, Colorado Springs, Colorado, for Intervenor–Appellant Christopher Hawk.

NIETO, J.

Intervenors, Elvin L. Gentry, P.C., and Christopher Hawk, appeal the trial court's

judgment that forfeited certain real property to the state. We affirm.

The prior owner used the property at issue to commit several offenses for which he was later convicted. *See People v. Pease*, (Colo. App. No. 98CA2406, Sept. 21, 2000)(not published pursuant to C.A.R. 35(f)). In 1994, shortly after the owner's arrest, the State of Colorado filed an action under § 16–13–101, et seq., C.R.S.2004, seeking forfeiture of the property as a public nuisance. The trial court issued a temporary restraining order (TRO) placing the property in the "constructive custody" of the court until a final determination in the action and ordering the sheriff or any law enforcement agency to "seize the real property and immediately vacate any and all persons from the premises." Shortly after the court issued the order, the state recorded a lis pendens.

In 1998, Gentry recorded two deeds of trust on the property issued by the owner as security for a debt owed to Gentry and incurred after 1994.

In 2000, the lis pendens expired pursuant to § 38–35–110(4), C.R.S.2004. In 2001, Hawk recorded a deed of trust on the property issued by the owner as security for a debt owed to Hawk and incurred after 1994.

In 2002, after a division of this court affirmed the owner's convictions, the trial court found that the property was a public nuisance and ordered its forfeiture. *See People v. Pease, supra* (affirming owner's convictions); *People v. Pease*, 2004 WL 1353253 (Colo.App. No. 02CA2171, June 17, 2004)(not published pursuant to C.A.R. 35(f))(affirming the forfeiture). Hawk and Gentry then filed motions to intervene in the action. The trial court allowed them to intervene, but determined that the state's interest dated back to 1994 when the property was seized pursuant to the TRO. Therefore, the court held that the state's interest was superior to Hawk's and Gentry's interests.

## I.

■ Hawk and Gentry contend the court erred in finding the state's interest in the property related back to the date of seizure and was thus superior to theirs. We disagree.

Property found to constitute a public nuisance is subject to forfeiture to the state. Section 16–13–309, C.R.S.2004. At the time of the forfeiture, the public nuisance statutes provided:

(1) Nothing in this part 3 shall be construed in such manner as to destroy the validity of a bona fide lien upon real or personal property appearing of record prior to the seizure of personal property, prior to the filing of a notice of lis pendens on real property, or prior to actual or constructive notice to the lienholder of the state's potential claim of public nuisance.

(2) Title to real or personal property subject to forfeiture pursuant to the provisions of this section shall vest in the state and the seizing agency at the time of the physical seizure of said property or at the time of the issuance of court process for seizure of property, whichever is earlier.

Colo. Sess. Laws 1987, ch. 122, § 16–13–316 at 638 (now codified with amendments as § 16–13–316, C.R.S.2004).

The vesting provision of the statute added in 1987 codified the supreme court's interpretation of the public nuisance statutes expressed in *United States v. Wilkinson*, 686 P.2d 790 (Colo.1984). There, in a personal property forfeiture action, the court determined that the General Assembly intended that owners of such property should not be permitted to benefit financially by transferring ownership of the property, using the property as security for a loan, or otherwise altering the state's ownership rights acquired by a subsequent forfeiture. Therefore, the court held that the owner was divested of all legal title as of the date the property was seized, and the final adjudication of forfeiture related back at least to the date of seizure.

By codifying the holding in *Wilkinson* and extending it to reflect that title to real property vests at the time the court process for seizure issues, the General Assembly agreed with the supreme court's interpretation of legislative intent. This relation back provision is consistent with federal forfeiture law. *See United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890)(even as to purchasers in good faith, the right to property vests in the government when the act

causing forfeiture occurs, although title is not perfected until judicial action is completed); *Eggleston v. State*, 873 F.2d 242 (10th Cir.1989)(judgment of forfeiture relates back to time of unlawful act and vests title in the government as of that time).

Although *Wilkinson* involves personal property, we find it instructive on the legislative intent regarding forfeiture of real property. In *Wilkinson*, the court noted that the forfeiture statutes provided protection for liens that predate the seizure, but had no similar provision for liens appearing of record after the seizure. Accordingly, we conclude that the former § 16–13–316 likewise provided no protection to liens on real property that appeared of record after the court process for seizure of the property had issued.

Here, as between the state and the owner, the owner had no authority to convey or encumber the property in a manner detrimental to the state's interest in the property. The owner remained the record owner of the real property after the seizure. *See United States v. Wingfield*, 822 F.2d 1466 (10th Cir.1987)(owner's interest in property between seizure and forfeiture sufficient for a federal tax lien to attach). But upon entry of the judgment of forfeiture, the state perfected its legal title to the property effective as of 1994 when the property was seized under the TRO. Thus, when the owner issued the deeds of trust to Hawk and Gentry, these encumbrances were subject to the effects of the TRO. When the state's title was perfected by the judgment of forfeiture, its title related back to 1994 and was superior to the deeds of trust. *See United States v. Wilkinson, supra; see also United States v. Colonial Nat'l Bank*, 74 F.3d 486 (4th Cir. 1996)(bona fide purchaser for value who took an interest after judgment of forfeiture, but without actual notice of the forfeiture and where no lis pendens was filed, did not have interest superior to that of the government). We conclude, therefore, that the trial court correctly determined that the state's interest in the property was superior to Hawk's and Gentry's interests.

In reaching our conclusion, we have not considered Hawk and Gentry to be innocent purchasers for value. The deeds of trust were placed on the property as security for debts owed by the owner that were incurred after the seizure of the property and after the lis pendens was recorded. The trial court found that Hawk and Gentry were familiar with the owner's criminal prosecution and forfeiture proceedings. Gentry does not assert that he had no knowledge of the forfeiture. Hawk does so assert in his brief, but in his complaint and his brief, he argues that he was helping the owner comply with the TRO's requirement that the owner maintain the property. Thus, it appears that Hawk and Gentry had knowledge of the forfeiture action before they became creditors and before they received and recorded their deeds of trust.

Further, if we determined the deeds of trust were superior to the state's interest, the owner would financially benefit because he could use the property as security for his debts. This would be contrary to the public policy established by the General Assembly and explained by the supreme court in *Wilkinson*.

### II.

██ Hawk and Gentry also contend that once the lis pendens expired in 2000, their interests became superior to the state's interest. We disagree.

Nothing in § 16–13–301, et seq., as it existed at the time of the forfeiture, required the state to record a lis pendens in order to perfect its seizure of the property. To the contrary, § 16–13–316, as it then existed, provided for title to vest in the state upon issuance of the court process for seizure.

██ A lis pendens does not constitute a lien against real property. It merely gives notice of pending litigation to persons acquiring interests in the property. *Alien, Inc. v. Futterman*, 924 P.2d 1063 (Colo.App.1995).

Here, although the court did not enter a forfeiture order until eight years after the seizure, the state's interest in the property dated back to the seizure in 1994. Although the lis pendens was evidence of the state's seizure, the expiration of the lis pendens in no way interfered with the state's title to the property. Therefore, we conclude that under the circumstances here, Hawk's and Gentry's

interests did not become superior to the state's interest upon expiration of the lis pendens.

### III.

■ Relying on *People v. One 1968 Chevrolet*, 895 P.2d 1177 (Colo.App.1995), Hawk contends that equity requires that his deed of trust be found superior to the state's interest. We disagree.

In *People v. One 1968 Chevrolet, supra*, the intervenor was found to be the true owner of the seized property because of his equitable interest and good faith purchase for value without notice of the forfeiture. The case is distinguishable because Hawk is not a good faith purchaser and he is charged with notice. Further, his equitable argument does not overcome the public policy that owners may not pledge seized property as security for a debt.

### IV.

■ Hawk next contends that the trial court erred when it determined, without an evidentiary hearing, that the state's seizure occurred when the TRO was issued. We disagree.

Hawk argues that the state did not actually seize the property until the final order was issued because the TRO required the owner to "provide maintenance and utilities service."

■ We must accept the trial court's factual findings if they are supported by the record, as they are here. *See People v. Perea*, 74 P.3d 326 (Colo.App.2002).

Here, the TRO ordered the state to "seize the real property." This language complies with the requirements of § 16–13–308, C.R.S. 2004, and is sufficient to establish a seizure by the state.

The judgment is affirmed.

Judge ROTHENBERG and Judge LOEB concur.