**William W. HEWITT; and Valley Park Apartments, Inc., a Colorado corporation, Petitioners**

v.

**Thomas S. RICE; Brian R. Reynolds; and Senter, Goldfarb & Rice, a Colorado limited liability company, Respondents.**

**No. 05SC81.**

Supreme Court of Colorado,
En Banc.

March 19, 2007.

William A. Cohan, P.C., William A. Cohan, San Diego, California, Attorneys for Petitioners.

Treece, Alfrey, Musat & Bosworth, P.C., Michael L. Hutchinson, Kathleen M. Byrne, Denver, Colorado, Attorneys for Respondents.

Montgomery Little & McGrew, P.C., Frederick B. Skillern, Greenwood Village, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I.  Introduction

The tort of malicious prosecution requires proof that the action allegedly maliciously prosecuted was terminated in favor of the moving party.  An ex parte action, however, is exempt from the favorable termination requirement.  In *Thompson v. Maryland Casualty Co.*, 84 P.3d 496, 505 (Colo.2004), we left undecided the question whether a lis pendens filing ·comes within the ex parte exception to the favorable termination requirement.  Affirming the court of appeals' decision in *Hewitt v. Rice*, 119 P.3d 541 (Colo.App.2004), we now decide that a lis pendens is not an ex parte action and is not exempt from the favorable termination requirement.  We also decline to adopt a totality-of-the-circumstances test to determine whether the proceeding giving rise to the claim of malicious prosecution was favorably terminated when the parties entered a settlement.  Favorable termination is a question of law requiring an action to be resolved on the merits in favor of the party claiming malicious prosecution.

## II.  Facts and Prior Proceedings

The complicated history of the dispute underlying this case began fifteen years ago and includes three different appellate decisions.  In 1991, the petitioner, William W. Hewitt ("Hewitt"), filed a lender liability action against Pitkin County Bank and Trust ("the Bank"), an entity that is not a party to this appeal.  The case arose out of Hewitt's claim that the Bank had breached a construction loan agreement involving a home Hewitt was building.  In response, the Bank asserted a counterclaim for attorneys' fees and costs.  The trial court bifurcated the counterclaim into a separate proceeding.  Senter Goldfarb & Rice, LLC ("the Firm"), one of the respondents in this case, is a law firm that represented the Bank in the action; one of its attorneys, Thomas S. Rice, also a respondent, managed the Bank litigation for the Firm.

The Bank obtained a judgment against Hewitt in the construction loan dispute, and the court of appeals affirmed the judgment in *Hewitt v. Pitkin County Bank & Trust Co.*, 931 P.2d 456 (Colo.App.1995), *cert. denied* (Feb. 18, 1997).  The Bank subsequently obtained a judgment against Hewitt in its bifurcated counterclaim for attorneys' fees and costs.  On appeal, the court of appeals held in favor of the Bank and remanded the case to the trial court to determine additional fees and costs recoverable by the Bank. *Hewitt v. Pitkin County Bank & Trust Co.*, No. 94 CA1274 (Colo.App. May 23, 1996) (not selected for publication).  Upon remand, the trial judge entered a total judgment against Hewitt for $84,164.55.  Hewitt failed to pay the judgment.

In 1998, with the Firm and two of its attorneys, Thomas S. Rice and Brian R. Reynolds as counsel, the Bank sued Hewitt and his alleged alter ego, Valley Park Apartments, Inc. ("VPA"), to collect its judgment.  The Bank argued that Hewitt had transferred real property to VPA in an effort to prevent the Bank from collecting its judgment against Hewitt.  The Bank also asserted claims alleging that Hewitt violated the Colorado Uniform Fraudulent Transfer Act ("CUFTA") and that VPA was Hewitt's alter ego.  The Bank sought attorneys' fees and costs.  At the same time they filed the 1998 CUFTA claim, the Firm, Rice, and Reynolds prepared and recorded a notice of lis pendens against the real property held by VPA because it was the subject of the 1998 CUFTA claim.  Hewitt and VPA counterclaimed against the Bank alleging slander of title, intentional interference with contractual relationship, abuse of process, and ·the filing of frivolous and groundless claims.

Approximately one year after the initiation of the Bank's 1998 CUFTA and alter ego claims, Hewitt paid in full the Bank's $84,164.55 judgment from the 1991 case. In response, the Bank released its notice of lis pendens filed in connection with the 1998 case and offered an unopposed motion to dismiss its 1998 CUFTA and alter ego claims. About one month later, the Firm, Rice, and Reynolds withdrew from representing the Bank. Shortly thereafter, the trial court granted the Bank's motion to dismiss, but preserved the Bank's claim for attorneys' fees and Hewitt and VPA's counterclaims.

More than two years later, Hewitt and VPA successfully added the Firm and Rice as defendants to their counterclaims against the Bank. However, within six months, the Bank paid Hewitt and VPA $950,000.00 to settle the counterclaims and to release the Bank from liability in any future claims. Thus, the only remaining claims were Hewitt and VPA's counterclaims against Rice and the Firm. The trial court granted summary judgment against Hewitt and VPA, holding that the counterclaims against the Firm and Rice were barred by the applicable statute of limitations. The trial court further entered judgment against Hewitt and VPA for $6,500 related to a pending motion to show cause, which the court determined to be frivolous and groundless.

About six months after the summary judgment order, despite their repeated losses in the 1991 and 1998 cases, Hewitt and VPA filed another suit in 2003 claiming malicious prosecution, and naming the Firm and two of its attorneys, Rice and Reynolds, as defendants. This is the case now before us on certiorari review. We will refer to the parties as Hewitt and the Firm unless the context otherwise requires. Hewitt's theory was that the Firm knew the assets belonged to VPA, not Hewitt personally, and that the Firm improperly pressured Hewitt to pay the judgment he owed the Bank by making VPA's property unmarketable. The malicious prosecution complaint was founded upon the Firm's preparation of the 1998 CUFTA claim and its accompanying lis pendens.

Approximately three months after Hewitt filed the 2003 malicious prosecution action, the trial court dismissed the action for failure to state a claim. The court concluded that favorable termination of the underlying proceeding was an essential element of a malicious prosecution claim. It also held that Hewitt's settlement with the Bank, which resolved both the Bank's claim for attorneys' fees and costs and Hewitt's counterclaims, did not constitute a favorable termination of the underlying proceeding with respect to the original 1998 CUFTA proceeding and the lis pendens. The trial court awarded the Firm attorneys' fees and costs. Hewitt appealed.

The court of appeals affirmed the trial court's reasoning that the Bank's voluntary dismissal of the 1998 CUFTA claim, Hewitt's payment of the original judgment, and the Bank's settlement did not constitute favorable termination of the proceedings. *Hewitt v. Rice,* 119 P.3d 541, 544 (Colo.App.2004). Additionally, the court of appeals refused to adopt a totality-of-the-circumstances test, noting that there existed no support for such a test in Colorado. *Id.*

We granted certiorari to consider the following two issues: first, whether Colorado malicious prosecution law should be modified to exclude the element of favorable resolution when the claim is based upon the wrongful filing of a lis pendens; second, whether Colorado should adopt a totality-of-the-circumstances test for determining if the proceeding giving rise to the claim of malicious prosecution was favorably terminated in a civil case. We reject both propositions.

### III. Favorable Resolution Element of Malicious Prosecution

Generally, to prevail on a claim for malicious prosecution, the following elements must be satisfied: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages. *Thompson,* 84 P.3d at 503; *see also* CJI–Civ. 4th 17:1 (2007). In *Thompson,* we upheld the principle that "the filing of a notice of lis pendens may form the basis of a claim for malicious

prosecution." *Id.* at 504 *(citing Johnston v. Deidesheimer,* 76 Colo. 559, 560, 232 P. 1113, 1114 (Colo.1925)). We have consistently held that where a lis pendens forms the basis of a malicious prosecution claim, the lis pendens action must be terminated in favor of the plaintiff. *See id.; Westfield Dev. Co. v. Rifle Inv. Assoc.,* 786 P.2d 1112, 1118–19 (Colo. 1990); *Lounder v. Jacobs,* 119 Colo. 511, 514, 205 P.2d 236, 238 (Colo.1949). The requirement of favorable termination is important because the statute of limitations begins running at the point of favorable termination, and favorable termination is a substantive element of the plaintiff's claim for malicious prosecution. Dan B. Dobbs, *The Law of Torts* § 436 (2000). Thus, in *Westfield,* we observed that a "malicious prosecution claim that arises out of the main action may not usually be brought as a counterclaim since the main action has not yet terminated in favor of the counterclaimant." 786 P.2d at 1119 n. 4, *cited in Thompson,* 84 P.3d at 505. As we noted in *Johnston,* when a lis pendens forms the basis of a malicious prosecution action, "liability would attach for filing the notices [of lis pendens] for such damages, if any, as may have been sustained by reason of the filing." 76 Colo. at 561, 232 P. at 1114.

█ Hewitt argues that Colorado should adopt Restatement (Second) of Torts section 674, comment k (1977), which carves out an exception to the malicious prosecution element requiring termination of the underlying claim in favor of the plaintiff. The Restatement permits a malicious prosecution claim in the absence of favorable termination if the claim arises out of an ex parte proceeding. Comment k provides: "An action may be maintained for the wrongful initiation of ex parte proceedings without proving that they have terminated in favor of the person against whom they have been brought." Defining an ex parte proceeding, comment k notes that "proceedings are ex parte when relief is granted without an opportunity for the person against whom the relief is sought to be heard." However, while comment k offers as examples of ex parte proceedings an attachment procured to secure the payment of a future judgment and a lien, it does not specifically mention lis pendens filings.

The court of appeals in *Walford v. Blinder, Robinson & Co.,* 793 P.2d 620, 623 (Colo.App. 1990), referenced the Restatement (Second) of Torts section 674 but explicitly held that malicious prosecution claims based upon a lis pendens filing cannot be sustained unless the plaintiff obtains a favorable termination. *Id., cited in Thompson,* 84 P.3d at 505. Nevertheless, we noted in *Thompson* that the court of appeals in *Walford* did not reference the ex parte exception of comment k. *Thompson,* 84 P.3d at 505. Thus, we declined to address whether Colorado should adopt the comment k exception, and we did not state whether lis pendens filings were ex parte proceedings under comment k.

In the present case, the crucial question to resolve before deciding whether to adopt the comment k exception is whether lis pendens filings are ex parte and thereby potentially fall under the comment k exception. To resolve that question, we must examine the nature and purpose of a lis pendens.

█ Filing a lis pendens is not intended to be an advantageous mechanism for a party. Lis pendens filings are designed to provide notice to third parties that there is a suit involving the property subject to the lis pendens. *See, e.g., Med. Facilities Dev., Inc. v. Little Arch Creek Prop., Inc.,* 675 So.2d 915 (Fla.1996). A lis pendens does not constitute a lien against real property. *People v. Elvin L. Gentry, P.C.,* 107 P.3d 1094, 1096 (Colo. App.2004); *Brossia v. Rick Constr., LLC,* 81 P.3d 1126, 1129 (Colo.App.2003). It merely gives notice of pending litigation (in this case, notice of the 1998 CUFTA claim) to persons acquiring interests in the property. *Elvin Gentry,* 107 P.3d at 1096; *see also* 10 Stephen W. Seifert, Colo. Prac., Creditors' Remedies—Debtors' Relief § 7.12 (2006). The filing of a notice of lis pendens is proper if the claimant shows that the claim asserted relates to a right of possession, use, or enjoyment of real property. *James H. Moore & Assoc. Realty, Inc. v. Arrowhead at Vail,* 892 P.2d 367, 373 (Colo.App.1994), cited in 1B Frederick B. Skillern, Colo. Prac., Methods of Practice § 26.9 (5th ed.2006). A lis pendens has serious consequences because "[o]nce a lis pendens is filed, it renders title unmarketable and therefore effectively pre-

vents the property's transfer until the litigation is resolved or the lis pendens is expunged." *Kerns v. Kerns,* 53 P.3d 1157, 1164 n. 6 (Colo.2002).

■ At its essence, filing a notice of lis pendens is a simple, non-judicial procedure. When the Bank filed the lis pendens against Hewitt's property in 1998, section 38–35–110, C.R.S. (1998), provided:

> After filing any pleading in an action wherein relief is claimed affecting the title to real property, any party to such action may record in the office of the county clerk and recorder in the county or counties in which the real property or any portion thereof is situated a notice of lis pendens containing the name of the court where such action is pending, the names of the parties to such action at the time of such recording, and a legal description of the real property.... From the time of recording, such notice of lis pendens shall be notice to any person thereafter acquiring, by, through, or under any party named in such notice, an interest in the real property described in the notice in the county or counties where recorded that the interest so acquired may be affected by the action described in the notice.[1]

As section 38–35–110 prescribes, the statutory procedure for filing a lis pendens does not involve an ex parte proceeding. Rather, the recording of a lis pendens action is accomplished through a non-judicial proceeding with the county clerk and recorder's office. A "notice of a lis pendens constitutes only a republication of the pleadings." *Westfield,* 786 P.2d at 1117.

■ A lis pendens filing lacks the characteristics of an ex parte proceeding as that term is used in the Restatement. A notice of lis pendens does not result in relief being granted without an opportunity for the opposing party to be heard. As we noted above, there is no remedy granted by a notice of lis pendens. Rather, it is merely a "republication of the pleadings." *Id.* Likewise, a lis pendens does not involve the addition of new claims. Hewitt cannot split the 1998 CUFTA claim from its associated lis pendens in an attempt to force a narrow view of the lis pendens standing alone. A lis pendens connected with and based upon an underlying claim simply restates what is already a public record, namely, that there exists a lawsuit involving a particular property. While filing a lis pendens may render the title of the subject property unmarketable, the "lis pendens is designed primarily to protect unidentified third parties," and it is not a tactic to be used as an ex parte remedy. *Debral Realty, Inc. v. DiChiara,* 383 Mass. 559, 420 N.E.2d 343, 348 (1981).

In contrast to Colorado's lis pendens procedure codified in section 38–35–110, in 1985, Massachusetts amended its lis pendens statute such that "plaintiffs are now required to obtain judicial authorization before recording a memorandum of lis pendens, which 'any party aggrieved' may contest." *Wolfe v. Gormally,* 440 Mass. 699, 802 N.E.2d 64, 67 (2004). When the Colorado General Assembly recently amended section 38–35–110 in 2002, it did not use the occasion to insert changes, such as those in Massachusetts, which do require ex parte judicial involvement prior to filing a lis pendens. Under section 38–35–110, there is no hearing or judicial action involved in filing the lis pendens. Accordingly, there is nothing in the nature of Colorado's lis pendens procedure suggesting lis pendens filings are ex parte proceedings within the scope of comment k. Therefore, a lis pendens filing, which is only notice of an underlying claim, does not come under the comment k exception for an ex parte proceeding.

By seeking to apply comment k to a lis pendens, Hewitt actually makes a veiled attempt to redefine Colorado's malicious prosecution elements into the tort of abuse of

---

1. In 2002, the Colorado General Assembly amended section 38–35–110 adding "in any court of record of this state or in any district court of the United States within this state" after "any pleading in an action." Prior to 1992, the language of Colorado's lis pendens statute stated: "The filing of notice of pendency of an action in compliance with law shall from the time of the filing thereof be notice to all persons who may subsequently acquire any right, title, interest, or estate in and to the real property described in such notice from any grantor or from any source whatsoever." Ch. 150, sec. 9, 1927 Colo. Sess. Laws 585, 590.

process by dropping the requirement of favorable termination. While New Mexico has eliminated the element of favorable termination, that state has combined the torts of abuse of process and malicious prosecution, unlike Colorado, which maintains separate actions. *See DeVaney v. Thriftway Mktg. Corp.*, 124 N.M. 512, 953 P.2d 277, 286 (1997). New Mexico's concept of "wrongful use of civil proceedings" differs from Colorado law because it "treats favorable termination as evidence bearing on probable cause but not as a separate element." Dobbs, *supra*, § 436 n. 28. Colorado, however, has retained the separate torts of abuse of process and malicious prosecution including the element of favorable termination. Timothy P. Getzoff, *Dazed and Confused in Colorado: The Relationship Among Malicious Prosecution, Abuse of Process, and the Noerr–Pennington Doctrine*, 67 U. Colo. L.Rev. 675, 685–686 (1996).

In Colorado, abuse of process requires proof of (1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages. *Trask v. Nozisko*, 134 P.3d 544, 553 (Colo.App.2006). The key differences between Colorado's torts of abuse of process and malicious prosecution are that abuse of process requires the plaintiff to prove neither favorable termination nor malice. Getzoff, *supra*, at 686; *see also* Dobbs, *supra*, § 438. "The tort of abuse of process serves an important role by filling the gap previously left open by malicious prosecution.... In order to further the policy of minimizing all unjustifiable litigation, malicious prosecution and abuse of process should be retained as separate and distinct torts." Getzoff, *supra*, at 686. Hewitt fails to present any compelling argument for melding Colorado malicious prosecution law into the tort of abuse of process.

There are several alternative avenues of relief in the case of a wrongful lis pendens filing, including a claim for abuse of process. *See Salstrom v. Starke*, 670 P.2d 809 (Colo.App.1983). We stated in *Kerns* that "if a notice of lis pendens is improperly recorded ... section 38–35–204(1)–(2) au-

thorizes an action to expunge a 'spurious' notice of lis pendens, and award the costs and attorneys fees associated with such an action to the prevailing party." *Kerns*, 53 P.3d at 1164 n. 6. The wrongful filing of a lis pendens can also be remedied through actions claiming slander of title, *see Fountain v. Mojo*, 687 P.2d 496, 500 (Colo.App.1984), and intentional interference with contractual relationship, *see Westfield*, 786 P.2d at 1117; *Hein Enter., Ltd. v. San Francisco Real Estate Investors*, 720 P.2d 975 (Colo.App. 1985). Moreover, Hewitt could have filed a motion for sanctions against the Firm under C.R.C.P. 11 if he believed there to be no factual basis for the 1998 CUFTA claim and the lis pendens. *Schmidt Const. Co. v. Becker–Johnson Corp.*, 817 P.2d 625 (Colo.App. 1991).

In the case preceding his malicious prosecution claim, Hewitt pursued claims for slander of title, intentional interference with contractual relationship, abuse of process, and spurious lien, but the trial court granted summary judgment holding that the claims were precluded by the statute of limitations. Hewitt's pleadings demonstrate his awareness of the many alternative forms of relief that a property owner may pursue in the case of a wrongful lis pendens filing.

Hewitt's malicious prosecution claim avoids the statute of limitations problem that doomed his other claims only if favorable termination is a necessary element of the claim. As the Firm points out, Hewitt's position results in its own logical undoing. At the summary judgment stage, the statute of limitations did not bar Hewitt's claim for malicious prosecution only because the requirement of favorable termination extended the period in which Hewitt could file. Thus, the limitations period on Hewitt's claim for malicious prosecution did not begin running until his underlying claim was "favorably terminated," which Hewitt argues occurred after the settlement with the Bank. Paradoxically, if we were to adopt Hewitt's argument that favorable termination is not a requirement in actions based upon the filing of a lis pendens, Hewitt's claim for malicious prosecution would have been time-barred just like his slander of title, intentional interference

with contractual relationship, abuse of process, and spurious lien claims. Thus, given Hewitt's suggested rule of law, he asks this court to adopt a standard that results in a momentary victory, but would ultimately preclude his malicious prosecution claim. This logical conundrum further reveals the unreasonableness of Hewitt's argument.

Therefore, we hold that a malicious prosecution action based upon the filing of a lis pendens requires that the action underlying the lis pendens be terminated in favor of the plaintiff.

## IV. Totality–of–the–Circumstances Test

■ Hewitt argues in the alternative that even if a malicious prosecution action based upon the filing of a lis pendens requires favorable termination of the underlying proceeding, his case demonstrates under the totality-of-the-circumstances that the Bank's 1998 CUFTA claim and the lis pendens were terminated in his favor. The facts relevant to resolving Hewitt's argument are the 1998 CUFTA action, which was the basis for the Bank's filing of the lis pendens, and Hewitt's $950,000.00 settlement of his counterclaims against the Bank. Taking the 1998 CUFTA claim and the settlement together, Hewitt argues that we should adopt a totality-of-the-circumstances test because, *inter alia*, the determination of favorable termination must be found in the substance rather than the form of prior events and often involves questions of fact. We reject Hewitt's proposed test because it would treat settlement as evidence of favorable termination.

■ In our view, a settlement does not constitute favorable termination for purposes of a malicious prosecution action. *See, e.g., Bell Lumber Co. v. Graham,* 74 Colo. 149, 219 P. 777 (1923); *Webb v. Youmans,* 248 Cal.App.2d 851, 853, 57 Cal.Rptr. 11, 13 (1967); 30 A.L.R.4th 572 § 2(a), 17. The Restatement (Second) of Torts section 674, comment j (1977), discusses civil malicious prosecution actions and notes that civil proceedings may be terminated in favor of the person against whom they are brought by: (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person

bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of any further proceedings that it may entail.

Comment j also incorporates Restatement (Second) of Torts section 660 and its comments, which preclude compromise or settlement from qualifying as favorable termination in criminal cases. Comment c to section 660 notes that "[a]lthough the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." Restatement (Second) of Torts section 660, comment c. While comment c to section 660 pertains to criminal proceedings, comment j to section 674 explicitly incorporates into civil malicious prosecution actions the principles provided in section 660 and its comments.

Hewitt relies on case law from other jurisdictions, such as Arizona, that recognize settlement as a favorable termination in a malicious prosecution case. The Arizona Court of Appeals held in *Giles v. Marce* that whether a settlement amounted to a favorable termination is a question of fact for the jury to decide. 195 Ariz. 358, 988 P.2d 143, 148 (Ariz.App.1999). The court noted that "when there has been no adjudication on the merits, the existence of a 'favorable termination' of the prior proceeding generally must be found in the substance rather than the form of prior events and often involves questions of fact." *Id.* at 147–48 *(citing Bradshaw v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 411, 419, 758 P.2d 1313, 1321 (1988) and *Frey v. Stoneman,* 150 Ariz. 106, 111, 722 P.2d 274, 279 (1986)). Because there are many reasons for the withdrawal or abandonment of a claim through settlement and no one

factor is determinative, a jury is expected to weigh all of the relevant facts and circumstances in deciding whether a settlement constituted favorable termination. *Id.*

Adoption of Hewitt's totality-of-the-circumstances test would require a significant change in our law of malicious prosecution. It is well established that favorable termination is a question of law for the court to decide and that a settlement is not a favorable termination. In 1923, this court held that "[i]t is well settled that a compromise voluntarily made, or a settlement by the consent of the accused, defeats a recovery in an action for malicious prosecution ...." *Bell Lumber,* 74 Colo. at 149, 219 P. at 777. Indeed, Bell Lumber cited cases dating back to 1827 in support of its holding. *See McCormick v. Sisson,* 7 Cow. 715 (N.Y.Sup. Ct.1827); accord Restatement (Second) of Torts § 660, 674 (1977).

We are not convinced Hewitt's suggested changes in the common law are warranted and, accordingly, we reject Hewitt's proposed totality-of-the-circumstances test. There are sound reasons why the tort of malicious prosecution is subjected to rigorous standards of proof. The tort of malicious prosecution has traditionally been disfavored in the law because of its chilling effect on the right of access to the courts. *See, e.g., DeVaney,* 953 P.2d at 285; *Chittenden Trust Co. v. Marshall,* 146 Vt. 543, 507 A.2d 965, 969 (1986). Relaxing the standard of favorable termination by allowing the jury to consider the facts and circumstances underlying the parties' decision to settle a case would lower the burden of proof in a malicious prosecution case and deter the settlement of cases. As stated above, there are several other remedies available in the case of a wrongful filing of a lis pendens. Making it easier to prove a malicious prosecution case under a totality-of-the-circumstances test runs the risk of chilling access to the courts and unnecessarily expanding liability.

## V. Conclusion

Lis pendens are not ex parte and, therefore, do not fall under the Restatement comment k exception to the malicious prosecution element of favorable termination. We hold that a malicious prosecution action based upon the filing of a lis pendens requires favorable termination on the merits of the claim underlying the lis pendens. Hewitt's $950,000.00 settlement with the Bank and the Bank's dismissal of its 1998 CUFTA claim after Hewitt paid his judgment do not support a finding of favorable termination. The judgment of the court of appeals is affirmed.

Justice EID concurs in part, and specially concurs in part.

Justice COATS joins in the concurrence and special concurrence.

Justice EID, concurring in part and specially concurring in part.

Under comment k of Restatement (Second) of Torts section 674 (1977), a plaintiff who brings a malicious prosecution claim is relieved of the burden to show that the proceeding upon which the claim is based was terminated in his favor, if that proceeding was ex parte in nature. The majority's principal holding today finds that Petitioners' claim, which is based on the recording of a lis pendens, does not fall within comment k because a lis pendens does not qualify as an ex parte proceeding. Maj. op. at 413. But the majority's reasoning—that the recording of a lis pendens is not a "proceeding" at all—establishes a more fundamental proposition: namely, that the filing of lis pendens, in and of itself, cannot serve as the basis of a claim for malicious prosecution because the plaintiff is not complaining about an "action" filed against him by the defendant. Because Petitioners' malicious prosecution claim is fatally deficient from the outset, I specially concur with Part III of the court's opinion.

## I.

The majority marshals an impressive array of evidence in order to demonstrate that the recording of a lis pendens is not an ex parte proceeding. As the majority explains, the recording of a lis pendens is "a simple, nonjudicial procedure" that "merely gives notice of pending litigation ... to persons acquiring

interests in the property." *Id.* at 412. It "does not constitute a lien against real property." *Id.* It "does not result in relief being granted...." *Id.* at 413. There "is no hearing or judicial action involved in filing the lis pendens." *Id.*. Recording a lis pendens "does not involve the addition of new claims," and thus "there is no remedy granted by a notice of lis pendens." *Id.* At bottom, a lis pendens "simply restates what is already a public record, namely, that there exists a lawsuit involving a particular property." *Id.*

I agree with the majority's description of what a lis pendens does (and does not) do. But nothing in the majority's description has anything to do with whether a lis pendens is an ex parte action. While the majority characterizes the "crucial question" in this case as deciding "whether lis pendens filings are ex parte," maj. op. at 412, its entire analysis centers on whether the recording of a lis pendens is an action *at all*—and it correctly concludes that it is not. Thus, comment k doesn't apply in these circumstances not for any reason involving the ex parte nature of the underlying action,[1] but because Petitioners' claim simply isn't based on an action.

The majority's rationale that the recording of a lis pendens is not an action establishes that Petitioners' malicious prosecution claim fails from the start. The threshold element of a claim for malicious prosecution is that the plaintiff must be complaining about an "action" brought against him. Maj. op. at 411–12 (citing *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo.2004)). Here, Petitioners' malicious prosecution claim, as they describe it, is based solely on Respondents' recording of a lis pendens.[2] Since the recording of a lis pendens is not an action, Petitioners' claim for malicious prosecution fails as a matter of law.

I recognize that we have, in the recent past, stated that a lis pendens can serve as the basis of a malicious prosecution claim. *See Thompson*, 84 P.3d at 504 ("The filing of a notice of lis pendens may form the basis of a claim for malicious prosecution.") (citing *Johnston v. Deidesheimer*, 76 Colo. 559, 561, 232 P. 1113, 1114 (1925)); *Westfield Dev. Co. v. Rifle Inv. Assoc.*, 786 P.2d 1112, 1118–19 (Colo.1990) ("We have previously held that the filing of notice of lis pendens may be actionable as malicious prosecution." (citing *Johnston*)); *Kerns v. Kerns*, 53 P.3d 1157, 1164 n. 6 (Colo.2002) ("[W]e have held that in the appropriate case, the filing of notice of lis pendens may be actionable as malicious prosecution." (citing *Westfield*)). These statements might be understood to mean that the recording of a lis pendens *alone* can serve as the basis of a malicious prosecution claim. But we have never expressly held that to be the case.

The source of the statements appears to be our decision in *Johnston v. Deidesheimer*, 76 Colo. 559, 232 P. 1113 (1925), where we considered a malicious prosecution claim alleging the wrongful filing of two lawsuits and attendant notices of lis pendens filed by the defendants. The plaintiff in *Johnston* claimed that he suffered damages as a result of the lis pendens notices, specifically that he was unable to dispose of his real property. But *Johnston* took pains to explain that the plaintiff's allegations were that "the *actions* ... were instituted without right and maliciously." *Id.* at 560, 232 P. at 1114 (emphasis added). The defendants only were liable for damages resulting from the recording of the lis pendens notices "if the suits brought by defendants against plaintiff were brought maliciously, and without probable cause...." *Id.* at 561, 232 P. at 1114.

---

1. The comment k exception appears to be based on the rationale that it would be improper to require the plaintiff in a malicious prosecution case to prove that the underlying action she complains of was terminated in her favor when that action was ex parte in nature because, by definition, she was absent from that action and could not defend her position. *See, e.g., Bump v. Betts*, 19 Wend. 421 (N.Y.1838); *Hyde v. Greuch*, 62 Md. 577 (1884); *Lanterman v. Del., L. & W. R.R. Co.*, 229 F. 770 (D.N.J.1916).

2. Petitioners argued in their Petition for a Writ of Certiorari that the court should grant their petition because it would give the court the opportunity to consider "whether under Colorado law malicious prosecution should be modified to exclude the element of favorable resolution *when the claim is based upon the wrongful filing of lis pendens."* Pet. at 4 (emphasis added).

We have never had to squarely face the question of whether the recording of a lis pendens, in and of itself, could support a malicious prosecution claim. Kerns did not concern a malicious prosecution claim, and the malicious prosecution claims in Thompson and Westfield involved the recording of lis pendens based on underlying actions. *See Thompson,* 84 P.3d at 504; *Westfield,* 786 P.2d at 1115. Our statements should be understood to mean, as we held in Johnston, that where a plaintiff has properly based her malicious prosecution claim on an action filed against her, the recording of a lis pendens noticing the existence of that action serves as evidence of damages that flow from the allegedly wrongful action. *See* 76 Colo. at 561, 232 P. at 1114. I believe we should take this opportunity today to clarify our earlier statements and squarely hold that the recording of lis pendens, in and of itself, cannot support a claim for malicious prosecution. Such a clarification is more than a housekeeping measure, as it would make clear that a plaintiff who is aggrieved by the allegedly wrongful recording of a lis pendens standing alone, without an underlying action, must look elsewhere for relief. *See, e.g.,* § 38–35–204(1) & (2), C.R.S. (2006) (setting forth procedure for expunging a "spurious lien" or "spurious document").

## II.

During its discussion of comment k in Part III of its opinion, the majority accepts Petitioners' characterization of their malicious prosecution claim as based solely on the recording of the lis pendens. *See, e.g.,* maj. op. at 411–12 (noting that in *Thompson,* "we upheld the principle that the filing of a notice of lis pendens may form *the basis* of a claim for malicious prosecution ...." (internal quo-

tation marks omitted) (emphasis added)), and *id.* at 414 (noting that "[t]here are several alternative avenues of relief in the case of a *wrongful lis pendens filing* ...." (emphasis added)). *But see id.* at 413 (contradicting this characterization by stating that "Hewitt cannot split the 1998 CUFTA claim from its associated lis pendens in an attempt to force a narrow view of the lis pendens standing alone."). Based on this characterization, as noted above, I would find that Petitioners have failed to state a claim for malicious prosecution. But the majority goes on to consider in Part IV of its opinion the question of whether the Bank's 1998 CUFTA action, which served as "the basis for the Bank's filing of the lis pendens," was resolved in Petitioners' favor. Maj. op. at 415. In other words, in Part IV of its opinion, the majority shifts gears and characterizes Petitioners' claim as one based on the 1998 action, rather than solely on the filing of lis pendens noticing that action.

If the majority's latter characterization is indeed correct—and I would find that it is [3]—then the comment k exception plainly would not apply in this instance because the 1998 action was not ex parte in nature (assuming, without deciding, that Colorado recognized such an exception).[4] The only issue remaining in the case would be whether the 1998 action was resolved in Petitioners' favor. Because I believe that the majority properly rejects the totality-of-the-circumstances test and finds that, as a matter of law, the 1998 action was not resolved in Petitioners' favor, maj. op. at 415–16, I concur in the remainder of the majority's opinion.

\* \* \*

We should put our tort house in order. I would take the opportunity today to clarify

---

3. For example, the court of appeals described Petitioners' malicious prosecution claim as alleging that Respondents "knew or should have known that it was unnecessary to bring" the 1998 action, that they "knew or should have known that there was no fraudulent transfer," and that they "knew or had reason to know that the [1998 action] and Notice of Lis Pendens lacked any reasonable basis of law and fact." *Hewitt v. Rice,* 119 P.3d 541, 543 (Colo.App. 2004).

4. Thus, the action that forms the basis of the malicious prosecution claim is the same action that might qualify under comment k, if Colorado were to recognize that exception. *See* Restatement (Second) of Torts § 674 (stating that "[o]ne who takes an active part in the initiation ... of *civil proceedings* against another is subject to liability to the other for wrongful civil proceedings if (a) he acts without probable cause ... and (b) *except when they are ex parte, the proceedings* have terminated in favor of the person against whom they are brought." (emphasis added)).

our previous opinions and hold expressly that the recording of a lis pendens, standing alone, cannot support a malicious prosecution claim. I therefore concur with all of the court's opinion with the exception of Part III, with which I specially concur in the result.

I am authorized to state that Justice COATS joins in this opinion concurring in part and specially concurring in part.

**The PEOPLE of the State of Colorado, Complainant,**