IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2025

## CHRISTINE SMITH v. DILLARD TENNESSEE OPERATING LIMITED PARTNERSHIP ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-1365-21        Felicia Corbin Johnson, Judge**

_____

### No. W2024-01081-COA-R3-CV

_____

The trial court dismissed the plaintiff's malicious prosecution case at the summary judgment stage on the basis that she had failed to establish an element of the cause of action. Like the trial court, we conclude that the plaintiff failed to show that the nolle prosequi resolution of the underlying criminal matter constituted a favorable termination. Therefore, we affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, and CARMA DENNIS MCGEE, JJ., joined.

Christine Smith, Memphis, Tennessee, pro se.

Robert L.J. Spence, Jr., and Kristina A. Woo, Memphis, Tennessee, for the appellees, Dillard Tennessee Operating Limited Partnership and Timothy Culver.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Christine Smith was shopping at a Dillard's department store in Collierville, Tennessee on September 20, 2019, when the events relevant to this appeal occurred. Timothy Culver, a loss prevention officer for the store, was on duty that day and stopped Ms. Smith in the store on suspicion of shoplifting based upon video footage. Mr. Culver reported that Ms. Smith had $520.00 worth of unpurchased merchandise in a Dillard's shopping bag. He escorted Ms. Smith to a detention area and notified the local police, who arrested her for shoplifting.

The City of Collierville charged Ms. Smith with shoplifting. Then, on June 23, 2020, the State of Tennessee entered an Order for the Expungement of Criminal Offender Record stating that a nolle prosequi[1] had been entered in the case pursuant to Tenn. Code Ann. § 40-32-101.

On April 6, 2021, Ms. Smith filed the action at issue in this appeal against Dillard's[2] and Mr. Culver (collectively, "the defendants"). She asserted causes of action for malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. The parties engaged in discovery, and the defendants filed a motion for summary judgment as to all of the claims. After a hearing in April 2024, the trial court denied the defendants' motion on the basis that genuine issues of material fact remained as to the first and second elements of the plaintiff's malicious prosecution claim (probable cause and malice). The court granted the defendants' request for permission to submit additional briefs on the third element—specifically, favorable termination. Both parties submitted additional briefs, and another hearing was held in June 2024. The trial court entered an order on June 21, 2024, in which it concluded that the plaintiff had failed "to establish that the underlying judicial proceeding was dismissed due to her innocence." Therefore, the court granted the defendants' motion for summary judgment and dismissed all of the plaintiff's claims.[3]

Ms. Smith appeals the trial court's decision, arguing that the court erred in concluding that she had not established that the nolle prosequi disposition constitutes favorable termination for purposes of a claim of malicious prosecution.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and

---

[1] The term "nolle prosequi" is defined as follows: "1. A legal notice that a lawsuit or prosecution has been abandoned. 2. A docket entry showing that the plaintiff or the prosecution has abandoned the action." *Nolle prosequi*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[2] The original complaint named Dillard's, Inc. and Timothy Culver as defendants. The correct company name, Dillard Tennessee Operating Limited Partnership, was later substituted as defendant by agreement of the parties.

[3] The court's order expressly dismissed the entire lawsuit; the only cause of action at issue on appeal is the claim for malicious prosecution.

must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at \*4 (Tenn. Ct. App. June 3, 2019). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

When the party moving for summary judgment does not bear the burden of proof at trial, it must meet its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party meets its burden of production, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). "Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that 'set forth specific facts showing that there is a genuine issue for trial.'" *Edward Jones Tr. Co. v. Woods*, No. M2023-00172-COA-R3-CV, 2024 WL 2795844, at \*3 (Tenn. Ct. App. May 31, 2024) (quoting TENN. R. CIV. P. 56.06). If the nonmoving party does not do so, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06. However, if the moving party fails to show that summary judgment is appropriate, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. Ct. App. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

The sole issue before this Court is whether the trial court erred in dismissing Ms. Smith's claim for malicious prosecution based upon her failure to establish a necessary element of the claim. For the reasons set out below, we agree with the trial court's dismissal of the malicious prosecution action, in accordance with the Supreme Court's decision in *Mynatt v. National Treasury Employees Union*, 669 S.W.3d 741 (Tenn. 2023).

An action for malicious prosecution, a tort, "seeks to redress misuse of the legal process" by "allow[ing] a person who was a defendant in one case to sue an individual involved in the earlier proceeding for knowingly and maliciously pursuing the defendant for a false act or crime." *Mynatt*, 669 S.W.3d at 746. Courts have observed that this tort is "'not to be favored'" because the possibility of such an action tends "'to deter our public officials from the proper performance of their duties to the detriment of the safety and welfare of the community.'" *Id.* (quoting *Roblyer v. Hoyt*, 72 N.W.2d 126, 128 (Mich.

- 3 -

1955). The prospect of a malicious prosecution action may also "'reduce the public's willingness to resort to the court system for settlement of disputes.'" *Id.* (quoting *Himmelfarb v. Allain*, 380 S.W.3d 35, 41 (Tenn. 2012)).

To make out a claim for malicious prosecution, a plaintiff must show (1) that the defendant instituted a legal proceeding against him or her without probable cause and (2) with malice, and (3) that the legal proceeding "'terminated in the plaintiff's favor.'" *Id.* (quoting *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005)). These elements are the same regardless of whether the underlying action was civil or criminal in nature. *Id.* In the present case, the trial court found that genuine issues of material fact remained as to the first two elements but dismissed the action at the summary judgment stage due to Ms. Smith's failure to establish the third element. We must, therefore, consider only the third element—whether the underlying proceeding was terminated in Ms. Smith's favor.

The expungement order in this case states that a nolle prosequi had been entered in the shoplifting case against Ms. Smith pursuant to Tenn. Code Ann. § 40-32-101.[4] What does the entry of a nolle prosequi mean? In Latin, "nolle prosequi" means "'I am unwilling to prosecute.'" *State v. Layman*, 214 S.W.3d 442, 445 n.4 (Tenn. 2007) (quoting *State v. Harris*, 33 S.W.3d 767, 769 n.3 (Tenn. 2000)). Our Supreme Court defines the term to mean "the formal entry of record in which the district attorney general terminates the prosecution of a case." *Id.* The decision of whether to order nolle prosequi "is up to the District Attorney General and the court," and "[t]here may be many reasons prompting and fully justifying such action by the State in any given case." *State v. D'Anna*, 506 S.W.2d 200, 202-03 (Tenn. Crim. App. 1973).

Did the nolle prosequi constitute a termination of the shoplifting case in Ms. Smith's favor for purposes of a malicious prosecution claim? Ms. Smith asserts that the trial court erred in its interpretation of *Mynatt v. National Treasury Employees Union*. We will examine that case and its application in the present matter. Kenneth Mynatt, an employee of the Internal Revenue Service ("IRS"), served as vice president of the Union. *Mynatt*, 669 S.W.3d at 744. According to Mr. Mynatt, he was indicted on felony charges (for the misuse of Union funds) in 2014 because he criticized the Union and the IRS for financial

---

[4] Tennessee Code Annotated section 40-32-101 is the definitional provision applicable to the statutes governing the destruction of records upon dismissal or acquittal, Tenn. Code Ann. §§ 40-32-101–110. Under Tenn. Code Ann. § 40-32-106(a), all public records of a person charged with a felony or misdemeanor must be destroyed, upon a petition, under a list of circumstances, including if "[a] nolle prosequi was entered in the defendant's case." Tenn. Code Ann. § 40-32-106(a)(1)(D). The other circumstances under which an expungement may be ordered include the dismissal of the charge for a reason other than completion of a pretrial diversion program or judicial diversion program, a grand jury's return of a "no true bill," the release of an arrested person without charge, or the abatement of the charge by the defendant's death. Tenn. Code Ann. § 40-32-106(a)(1).

waste. *Id.* The prosecution decided to retire the criminal charges against Mr. Mynatt for one year. *Id.* After the year had passed, the prosecution did not revive the matter, which was formally dismissed in 2016. *Id.* Mr. Mynatt thereafter filed an action against the Union and others for malicious prosecution and civil conspiracy. *Id.* The trial court dismissed the claims on the ground that Mr. Mynatt "could not show that the retirement and dismissal constituted a favorable termination on the merits." *Id.* at 745. The Court of Appeals reversed,[5] and the case went to the Supreme Court. *Id.*

The Supreme Court framed the issue to be "under what circumstances the dismissal of criminal charges constitutes a 'favorable termination' for the purposes of a malicious prosecution claim." *Id.* The Court discussed the evolution of the standard for "favorable termination" in the courts over the past two centuries. *Id.* at 746-47. Due to concerns "about the chilling effect of overly expansive malicious prosecution claims," the Court noted, "the Tennessee courts began to shift to requiring an 'indication of innocence.'" *Id.* at 747 (quoting *Sewell v. Par Cable*, No. 87-266-II, 1988 WL 112915, at *3 (Tenn. Ct. App. Oct. 26, 1988)). In *Christian v. Lapidus*, 833 S.W.2d 71, 74 (Tenn. 1992), a civil action, the Court declined to require a final judgment on the merits, but "required the plaintiff to 'demonstrate an inference of innocence' in the underlying lawsuit." *Mynatt*, 669 S.W.3d at 747 (quoting *Christian*, 833 S.W.2d at 74). The *Christian* Court concluded that abandonment or withdrawal of a case was "sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accompanied by a compromise or settlement, or accomplished in order to refile the action in another forum." *Christian*, 833 S.W.2d at 74.

As the *Mynatt* Court explained, the standard for a favorable termination continued to evolve in two later cases:

> First, in *Parrish v. Marquis*, a client filed a legal malpractice action against her attorney, alleging that the attorney failed to properly represent her interests and engaged in "cost-consuming and inefficient litigation." 172 S.W.3d at 528. The trial court granted the attorney's motion for summary judgment because the statute of limitations had expired and the plaintiff lacked standing. *Id.* The attorney then filed a malicious prosecution complaint. However, this Court ultimately concluded that the attorney's cause of action "was not based on a favorable termination because the underlying legal malpractice complaint was dismissed on procedural grounds that did not reflect on the merits." *Id.*

---

[5] The Court of Appeals reasoned that Mr. Mynatt's complaint contained sufficient allegations of a termination in his favor by stating that "the charges against him were dismissed, that he was innocent of the charges, and that he entered into no deal or agreement with the prosecutor." *Mynatt v. Nat'l Treasury Emps. Un.*, No. M2020-01285-COA-R3-CV, 2021 WL 4438752, at *6 (Tenn. Ct. App. Sept. 28, 2021).

The *Parrish* Court instructed future courts to "examine the circumstances of the underlying proceeding" to determine whether the termination was favorable. *Id.* at 531. But if "the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense that it would support a subsequent action for malicious prosecution." *Id.* (quoting *Lackner*, 159 Cal. Rptr. 693, 602 P.2d at 395). Courts that follow the Restatement (Second) of Torts approach, which was favorably cited in *Parrish*, call for a fact-specific examination of the circumstances of dismissal and require the circumstances to indicate innocence. *See* Restatement (Second) of Torts §§ 674 cmt. j, 676 (Am. Law Inst. 1977); *Himmelfarb*, 380 S.W.3d at 39 (citing *Siliski v. Allstate Ins. Co.*, 174 Vt. 200, 811 A.2d 148, 151-52 (2002)); *see also Frey v. Stoneman*, 150 Ariz. 106, 722 P.2d 274, 278-279 (1986) (discussing the jurisdictions that allow an examination of the circumstances). The *Parrish* Court established that a favorable termination must "reflect on the merits," which seemingly shifted toward a requirement that the circumstances of the underlying case affirmatively indicate innocence—a requirement that the *Christian v. Lapidus* Court had declined.

This Court again considered the favorable termination element of a malicious prosecution claim in the case of *Himmelfarb v. Allain*. In *Himmelfarb*, a patient sued two physicians for leaving a guide wire in a vein leading to her heart, and later, she voluntarily dismissed her claims under Tennessee Rule of Civil Procedure 41.01 after discovering that another party was responsible. *Himmelfarb*, 380 S.W.3d at 37. The physicians then filed a malicious prosecution action against the patient. *Id.* The patient moved for summary judgment because, she argued, the physicians could not establish that the underlying action was terminated in their favor, but the trial court denied her motion. *Id.*

On appeal, this Court looked to *Parrish* and reiterated that to satisfy the favorable termination element of a malicious prosecution claim, the dismissal must be "a reflection on the merits of the underlying case." *Id.* at 40. However, we departed from the *Parrish* case in one notable aspect—we "decline[d] to follow those [majority of] jurisdictions that have adopted comment j to the Restatement (Second) of Torts section 674 and that examine the circumstances under which a voluntary nonsuit is taken," *id.* at 39-40, and overruled *Parrish* "[t]o the extent that *Parrish* can be read as adopting the Restatement (Second) approach," *id.* at 41.

We noted that the trial court's order dismissing the plaintiff's case without prejudice "neither addressed the merits of [the plaintiff's] case, nor the liability of [the defendants]." *Id.* This Court then held that a voluntary

dismissal "taken pursuant to Tennessee Rule of Civil Procedure 41 is not a favorable termination on the merits for purposes of a malicious prosecution claim." *Id.* at 37. We explained that, among other reasons, we did not "wish to deter parties from dismissing their claims when a dismissal is the appropriate course of action." *Id.* at 41.

*Mynatt*, 669 S.W.3d at 747-748.

Based upon these precedents, the *Mynatt* Court stated that "a favorable termination must 'relate to the merits—reflecting on . . . []either innocence of []or responsibility for the alleged misconduct,' and not a dismissal on procedural or technical grounds." *Id.* at 749 (quoting *Himmelfarb*, 380 S.W.3d at 41) (citation modified). Moreover, the *Himmelfarb* decision "prohibit[ed] courts from delving into the circumstances of a voluntary dismissal," thereby setting "'a high standard for a court to find a favorable termination where there is no order expressly stating a ruling on the merits.'" *Id.* (quoting *In re McKenzie*, No. 08-16378, 2013 WL 1091634, at *11 (Bankr. E.D. Tenn. Mar. 5, 2013)). The Court noted its approval of the principles explained in a Colorado case, including the statement that, "'Relaxing the standard of favorable termination by allowing the jury to consider the facts and circumstances underlying the parties' decision to settle a case would lower the burden of proof in a malicious prosecution case and deter the settlement of cases.'" *Id.* (quoting *Hewitt v. Rice*, 154 P.3d 408, 416 (Colo. 2007)).

In the case before it, the *Mynatt* Court was asked to consider "what qualifies as a favorable termination in the criminal context"—specifically, "when the dismissal of criminal charges can constitute a favorable termination." *Id.* The Court noted significant differences between civil lawsuits and criminal prosecutions: the fact that the plaintiff in a civil lawsuit decides whether to voluntarily dismiss the action, whereas the prosecutor is the one with the authority to dismiss a criminal case, and the fact that, unlike private parties, a prosecutor has "obligations to the public." *Id.* at 750. Nevertheless, the Court found that "some of the same policy reasons supporting a heightened favorable termination standard where the underlying action was civil also apply in the criminal context" and "the threat of a later malicious prosecution action could have a chilling effect on prosecutors or deter citizens from good-faith reporting of potentially criminal conduct." *Id.*

The plaintiff in *Mynatt* argued that the prosecution terminated in his favor because the charges were dismissed without compromise or settlement. *Id.* at 751. The defendants took the position that, under the precedent set in *Parrish*, the Court had previously "rejected the 'not inconsistent with innocence' approach, instead requiring that the disposition of the underlying case favorably 'reflect on the merits.'" *Id.* The Court came down on the side of the defendants, concluding that "a heightened barrier to bringing a successful claim of malicious prosecution is also appropriate in the criminal context and that the favorable termination standard articulated in *Parrish* and *Himmelfarb* should be extended to apply

where the underlying proceeding was criminal." *Id.* In reaching this conclusion, the Court further stated:

> We conclude that, regardless of whether the underlying action was civil or criminal, a fact-intensive and subjective inquiry into the reasons for and circumstances leading to the disposition is not permissible. *See, e.g.*, *Neff v. Neff*, 247 P.3d 380, 394 (Utah 2011) (requiring that the judgment in the underlying criminal proceeding indicate the accused's innocence for purposes of a malicious prosecution claim). Particularly where the underlying proceeding was criminal, the possibility of future discovery is not only daunting, but will be costly and time-consuming. Former prosecutors will be difficult to locate and might not have notes or recollection of their reasons for dismissing a criminal case. In criminal cases, prosecutors should feel free to dismiss cases if they conclude that the public interest is served by doing so without concern that they will be subject to later discovery regarding their reasons for dismissal, and citizens should not be deterred from providing information to prosecutors.

> Moreover, there are numerous reasons why a prosecutor might decide to dismiss a case. For instance, dockets may become overcrowded, a prosecutor's primary witness may be afraid to testify, or it may be difficult for the prosecutor to gather evidence in a timely manner. Although there is a presumption of innocence in criminal cases, a dismissal does not, by virtue of that, indicate innocence or that the action is without merit. These other possibilities demonstrate that while a lack of evidence is certainly one possible reason to dismiss a case, it is far from the only possible reason.

> We now clarify that the favorable termination standard provided in *Himmelfarb* and *Parrish* applies regardless of whether the underlying dismissal involves a criminal or civil action. A plaintiff can pursue a claim for malicious prosecution only if an objective examination, limited to the documents disposing of the proceeding or the applicable procedural rules, indicates the termination of the underlying criminal proceeding reflects on the merits of the case and was due to the innocence of the accused.

*Id.* at 752 (footnote omitted). In the case before it, the Court concluded that the facts in the complaint did not show that the dismissal reflected on the merits or indicated innocence. *Id.* at 753. Rather, discovery would be required to prove the element of favorable termination, and this was not permissible under *Parrish* and *Himmelfarb*. *Id.* at 752-53. Therefore, the Court determined that the Court of Appeals erred in reversing the trial court's decision to dismiss. *Id.* at 753.

In this present case, we must determine whether the entry of a nolle prosequi in Ms. Smith's case "reflect[ed] on the merits and indicate[d] innocence, and the determination must be based on the dismissal documents or applicable rules of procedure." *Id.* Based upon the principles set out in *Mynatt*, we reach the same conclusion as the trial court. A nolle prosequi is "a discharge of the case without a conviction or acquittal" and does not ordinarily bar a subsequent prosecution. *State v. Brooks*, No. M2013-00866-CCA-R3-CD, 2014 WL 2567135, at *3 (Tenn. Crim. App. June 6, 2014). As noted by the Court in *Mynatt*, there are many reasons why a prosecutor might decide not to pursue a case. 669 S.W.3d at 751. The only document in the record regarding the disposition of the criminal case against Ms. Smith is the expungement order, which states only that a nolle prosequi had been entered. There is nothing indicating that the nolle prosequi was entered based upon the merits of the case against Ms. Smith or because she was innocent. Thus, Ms. Smith failed to meet her burden with respect to an element of her cause of action for malicious prosecution. We conclude that the trial court properly dismissed Ms. Smith's claim.[6]

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Christine Smith, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

[6] This result is consistent with the *Mynatt* court's notation in a footnote that, to the extent its holding was inconsistent with its holding in *Scheibler v. Steinburg*, 167 S.W. 866 (Tenn. 1914), the previous case was overruled. *Mynatt*, 669 S.W.3d at 750 n.9. In *Scheibler*, the Court had accepted the entry of a nolle prosequi as a termination in favor of the plaintiff for purposes of a malicious prosecution action. 167 S.W. at 867.